# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** : | |
| : | |
| **Plaintiff,** : | |
| : | |
| vs. : | |
| : | Case No. CR2-09-043 |
| **TERRY W. THOMPSON,** : | JUDGE MARBLEY |
| : | |
| **Defendant.** : | |

## ORDER

## I.  INTRODUCTION

This matter is before the Court on Defendant Terry Thompson's ("Thompson") Motion to Suppress Evidence.  Thompson alleges that the evidence in question was obtained as the result of search of his home on June 18, 2008, that violated his Fourth Amendment right to be free from unreasonable searches and seizures.  He seeks suppression of all evidence seized from his home on that date.  On July 27, 2009, a hearing was held on Thompson's Motion to Suppress.  For the reasons set forth below, this Court **GRANTS** Thompson's Motion.

## II.  BACKGROUND

On June 18, 2008, agents of the Bureau of Alcohol, Tobacco, and Firearms ("Agents") executed a search warrant on Thompson's residence in Zanesville, Ohio.  That morning, shortly after leaving his residence, Thompson was stopped by the Agents and detained while his home was searched.  The Agents entered the home through the garage,[1] which contained caged lions

---

[1] Agent Ash testified that they entered through the garage door because entry through the front door posed a risk to the safety of the executing Agents.

and tigers. The only person in the house during the search was Defendant's wife, Marian Thompson ("Mrs. Thompson").

According to the testimony of Agent Beckman, who was part of the entry team, the Agents knocked on the garage door and announced their presence before entering. They received no response and entered after waiting approximately 30-45 seconds. Mrs. Thompson was naked in the kitchen at the time the Agents entered. Mrs. Thompson was unclothed because she was in the process of changing her clothes between feeding the various exotic animals that she and her husband owned. According to Mrs. Thompson, she thought she heard her name being called and went to look for clothing to put on when the door burst open and eight to ten Agents entered wearing Bureau of Alcohol, Tobacco, and Firearms uniforms and pointing their guns at her.

The Agents instructed Mrs. Thompson to put on a t-shirt and then told her to wait outside on the pool patio. During the course of the search, she was allowed to leave the patio area once to take a bear out of its cage and walk the animal. The search lasted approximately five hours, and with the exception of walking the bear, Mrs. Thompson remained on the patio in the hot sun, without anything to eat or drink, and in the plain view of the fourteen officers, clothed only in a t-shirt and no undergarments or pants. Mrs. Thompson claims that she repeatedly asked Agent Ash to see a search warrant during the course of the search, but that her requests were rebuffed. Agent Ash testified that he did not remember Mrs. Thompson asking to see the warrant, but did not dispute that she did. After the conclusion of the search, Mrs. Thompson was provided with a copy of the search warrant. At that time, Agent Ash reviewed the inventory of the property with Mrs. Thompson. The Agents seized a number of machine guns in the course of the search.

**III. LAW & ANALYSIS**

Thompson asserts that any evidence obtained in the search of his residence must be suppressed because the evidence was obtained as a result of an unconstitutional search and seizure. Thompson alleges that the search and seizure was unconstitutional because: (1) the executing Agents violated the "knock-and-announce" requirement of 18 U.S.C. § 3109; and (2) the Agents failed to present Mrs. Thompson with a copy of the search warrant at the outset of the search in violation of Federal Rule of Criminal Procedure 41(f)(1). The Government argues that the executing agents did knock and announce their presence before entering the house, and that even if they failed to do so, violation of the knock and announce statute is not grounds to suppress evidence under recent Supreme Court precedent. The Government also asserts that the Agents' actions did not violate Rule 41(f)(1).

*A. Knock & Announce*

18 U.S.C. § 3109[2] codifies the common-law principle "that law enforcement officers must announce their presence and provide residents an opportunity to open the door." *Hudson v. Michigan*, 547 U.S. 586, 589 (2006). Agent Beckman testified that the Agents knocked and announced their presence before entering the Thompson house. Mrs. Thompson implies that

---

[2] The statute states as follows:
The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.
18 U.S.C. § 3109.

they did not, although she admits that she thought she heard someone calling her name before the Agents entered.

The Court finds that no knock-and-announce violation occurred. Agent Beckman testified that the entry team knocked on the garage door, announced their presence, and waited before entering. Although she did not hear what the Agents were saying and thought someone was calling her name, Mrs. Thompson's testimony was consistent with the Agents' having announced their presence prior to entry. Moreover, even if the Court found that the executing agents failed to knock-and-announce their presence before executing the warrant, Thompson is not entitled to suppression because "[s]uppression is not a remedy for violation of the knock-and-announce rule." *United States v. Roberge*, 565 F.3d 1005, 1010 (6th Cir. 2009); *see also Hudson*, 547 U.S. at 594 (holding that the exclusionary rule does not apply to knock-and-announce violations). Therefore, Thompson's request for suppression on this ground is **DENIED**.

### B. The Fourth Amendment & Rule 41(f)

Thompson also argues that the evidence obtained should be suppressed because the executing Agents intentionally refused to present Mrs. Thompson with a copy of the warrant at the outset of the search or upon request during the search. The Government claims that the executing agents satisfied the requirements of Rule 41(f)(1) because there is no dispute that Agent Ash ultimately left a copy of the warrant with Mrs. Thompson at the conclusion of the search and performed an inventory of items seized.

The Fourth Amendment is a curb on the police power of the state. It guarantees: "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable

4

searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const., Amdt. 4. Unlike *Miranda* warnings and knock and announce – rules incorporated into the Fourth Amendment by the Supreme court – the requirement of reasonableness is in the text of the Constitution itself. *Wilson v. Arkansas*, 514 U.S. 927 (1995); *Miranda v. Arizona*, 384 U.S. 436 (1966). The analysis of the reasonablness of a search is most acute when considering the reasonableness of a search of the home. In the context of Fourth Amendment jurisprudence, "it is beyond dispute that the home is entitled to special protection as the center of the private lives of our people." *Minnesota v. Carter*, 525 U.S. 83, 99 (1998) (Kennedy, J. concurring); *see also Silverman v. United States*, 365 U.S. 505, 511 (1961) ("At the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion."). As Justice Souter noted, "We have, after all, lived our whole national history with an understanding of 'the ancient adage that a man's house is his castle [to the point that t]he poorest man may in his cottage bid defiance to all the forces of the Crown'." *Georgia v. Randolph*, 547 U.S. 103, 115 (2006) (quoting *Miller v. United States*, 357 U.S. 301, 307 (1958)). In recognition of this basic Fourth Amendment principle, "[s]earches and seizures inside a home without a warrant are presumptively unreasonable absent exigent circumstances." *United States v. Karo*, 468 U.S. 705, 715 (1984). Motivating this protection of the home is the principal that "in the home...*all* details are intimate details, because the entire area is held safe from prying government eyes." *Kyllo v. United States*, 533 U.S. 27, 37 (2001).

The reasonableness of a search and seizure is evaluated based upon the totality of the circumstances. *Ohio v. Robinette*, 519 U.S. 33, 39 (1996). "To satisfy the Reasonableness Clause, officers not only must obtain a valid warrant but they also must conduct the search in a reasonable manner." *Baranski*, 452 F.3d at 445. The willingness (or unwillingness) of officers to present a warrant to an occupant when asked goes to the reasonableness of a search. *See id.* at 443 (stating that "the decision of officers not to present an incorporated affidavit to the occupant upon request may be a relevant factor in determining the reasonableness of a search"). After all, an integral component of the Fourth Amendment's protection of the home is the requirement that a warrant must be obtained prior to a search. *Karo*, 468 U.S. at 715. As part of the warrant requirement, Federal Rule of Criminal Procedure 41(f)(c) states "[t]he officer executing the warrant must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken."

The Supreme Court and the Sixth Circuit have stated in dicta that neither the Fourth Amendment nor Rule 41 requires the executing officer to present a copy of the warrant before conducting the search. *United States v. Grubbs*, 547 U.S. 90, 98-99 (2006); *Baranski v. Fifteen Unknown Agents of Bureau of Alcohol, Tobacco and Firearms*, 452 F.3d 433, 443, 444 (6th Cir. 2006) (en banc) (same). In both *Grubbs* and *Baranski*, the executing agents presented a copy of the warrant to the defendant or the property owner shortly after the search began or upon request. *Grubbs*, 547 U.S. at 93 (defendant provided with copy of warrant 30 minutes into the search); *Baranski*, 452 F.3d at 436 (property owner's attorney shown copy of the warrant immediately upon request). In *Groh v. Ramirez*, however, the Supreme Court expressly left open the question directly raised in this case – whether it would be unreasonable under the Fourth Amendment for

an executing officer to refuse to produce a warrant at the outset of a search *upon the request* of an occupant. 540 U.S. 551, 562 n.5 (2004) ("Whether it would be unreasonable to refuse a request to furnish the warrant at the outset of the search when, as in this case, an occupant of the premises is present and poses no threat to the officers' safe and effective performance of their mission, is a question that this case does not present."); *see also Baranski*, 452 F.3d at 442 (noting that the *Groh* court "left open only the possibility that it would be 'unreasonable' to decline such a request [to see a warrant at the outset of a search where the occupant is present]...).

In this case, the record is clear that the executing Agents operated pursuant to a warrant supported by probable cause. The fact that the executing Agents possessed a valid warrant, however, "by no means establishes that a search satisfies the Reasonableness Clause upon execution." *Baranski*, 452 F.3d at 445. As noted above, in evaluating the reasonableness of a search and seizure, this Court can consider the Agents' unwillingness to show Mrs. Thompson the warrant upon request. *See id.* at 443.

Mrs. Thompson testified that she repeatedly asked to see the warrant during the search but that Agent Ash refused to show it to her. Agent Ash did not deny that she did so. He also testified that he had the warrant with him during the execution of the search. The Government has not put forth any reasons explaining or justifying the executing Agent's refusal to show Mrs. Thompson a copy of the warrant when she asked to see it. Nor has the Government identified any exigent circumstances at the time Mrs. Thompson requested to see the warrant that would justify the failure to produce the warrant. Mrs. Thompson testified that she considered the Agent's refusal to show her the warrant so strange that she feared that the executing Agents were

7

not actually law enforcement agents and feared that her life was in danger during the search. Mrs. Thompson testified that "I have no neighbors. It wasn't like people were on the porches watching what was going on. So I thought if they [executing agents] were thieves, they could very likely kill me when they were done." Mot. Suppress Hr'g Tr., Marian Thompson Direct Examination. She was also subject to the additional indignity of being naked when the executing Agents entered her house, dressing in front of fourteen officers with guns drawn, and then remaining naked from the waste down during the entirety of the search.

The Court finds the executing Agents' refusal to present the warrant upon request completely unreasonable and unjustified. One of the purposes served by the warrant requirement is informing citizens that the executing agents are acting under proper authorization when they invade the sanctity of a citizen's home.[3] That sentiment is succinctly but eloquently stated by the Supreme Court in *Camara v. Mun. Ct.*, 387 U.S. 523, 530-33 (1967):

> In our opinion, these arguments unduly discount the purposes behind
> the warrant machinery contemplated by the Fourth Amendment.
> Under the present system, when the inspector demands entry, the
> occupant has no way of knowing whether enforcement of the municipal
> code involved requires inspection of his premises, no way of knowing
> the lawful limits of the inspector's power to search, and no way of
> knowing whether the inspector himself is acting under proper
> authorization. That purpose cannot be served if executing officers
> arbitrarily decide to withhold presentation of the warrant until the

---

[3] In *United States v. Grubbs*, 547 U.S. 90 (2006), the Supreme Court noted that "[t]he Constitution protects property owners not by giving them license to engage the police in a debate over the basis for the warrant, but by interposing, *ex ante*, the deliberate, impartial judgment of a judicial officer..." *Id.* at 99. This Court agrees that confrontations between the police and home occupants about the validity of a search should be as limited as possible. It appears to this Court that by *not* furnishing a warrant upon request, after the premises have been secured, the possibility that a confrontation will occur is *more* likely. Producing a warrant reassures an occupant that her Constitutional rights are not being violated, such that the search may proceed without incident.

> conclusion of the search despite an occupant's repeated requests to view the warrant.

*See also United States v. Chadwick*, 433 U.S. 1, 9 (1977) (noting that "...a warrant assures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search."), *abrogated on other grounds*, *California v. Acevedo*, 500 U.S. 565 (1991).

The Government has not articulated safety or tactical concerns which justify refusing to present the warrant upon Mrs. Thompson's request. Furthermore, nothing in the record indicates that Mrs. Thompson was uncooperative or in any way jeopardized the search. The Court cannot conceive of any benefits that are or could be derived from leaving a home owner in doubt about the authority of the agents to search her home and fearful for her safety, particularly because the executing Agents had secured the premises and had the warrant with them. Rather than quickly allaying Mrs. Thompson's fears, her doubt was prolonged for several hours, during which her entire home and several outbuildings were searched, and she was made suffer the indignity of remaining without under garments or pants for that entire time. Justice Scalia, writing for the majority in *Kyllo*, held that details regarding the home are intimate and entitled to a reasonable expectation of privacy. 533 U.S. at 37. While being shown a warrant to reassure Mrs. Thompson that the search was valid would not have entirely dissipated this indignity, it would have given her the knowledge that she was not being made to suffer this affront to her dignity for an unlawful purpose.[4]

---

[4] The Ninth Circuit has noted that the "only legitimate interest served by the presentation of a warrant appears to be...to head off breaches of the peace by dispelling any suspicion that the search is illegitimate." *United States v. Hector*, 474 F.3d 1150, 1155 (9th Cir. 2007). While this may be one interest served by the presentation of a warrant, this Court does not agree that it is

The Agents' failure to produce the warrant upon request is only one factor among the totality of the circumstances making this search and seizure unreasonable. The Agents' execution of the search warrant was unreasonable in many other ways. The record shows that Mrs. Thompson was forced to partially dress in plain view of fourteen officers with guns pointed at her rather than being allowed to dress behind a counter. She was then required to sit outside in the heat for approximately five hours, naked from the waist down in plain view of the same fourteen officers, while her home was searched. She was not permitted to put on pants or even underwear during the course of the hours-long search. During that time she went without food or water. The officers who searched Mrs. Thompson's home had secured the premises and had Mrs. Thompson in a confined area where spoliation of evidence would not be an issue. Despite this, Mrs. Thompson was not shown either the warrant or identification of the officers notwithstanding repeated requests. When viewed in the totality of the circumstances, the execution of the search in this case was unreasonable and in violation of the Fourth Amendment.

## C. Suppression Pursuant to the Exclusionary Rule

Having found a Fourth Amendment violation, the question presented is whether the violation requires the suppression of evidence pursuant to the exclusionary rule. The animating purpose underlying the exclusionary rule is the deterrence of unlawful government behavior. *Elkins v. United States*, 364 U.S. 206, 217 (1960) (Exclusionary rule's "purpose is to deter – to compel respect for the constitutional guaranty in the only effectively available way – by

---

the only interest. Furthermore, in *Hector*, the Ninth Circuit did not consider the situation where an occupant requests to see the warrant. As explained above, in the asking for a warrant, the interest of privacy enters the equation.

removing the incentive to disregard it."). As was eloquently explained by the Supreme Court in *Weeks v. United States*, 232 U.S. 383, 391-93 (1914):

> The tendency of those who execute the criminal laws of the country to obtain conviction by means of unlawful seizures and enforced confessions, the latter often obtained after subjecting accused persons to unwarranted practices destructive of rights secured by the Federal Constitution, should find no sanction in the judgments of the courts, which are charged at all times with the support of the Constitution and to which people of all conditions have a right to appeal for the maintenance of such fundamental rights . . . If letters and private documents can thus be seized and held and used in evidence against a citizen accused of an offense, the protection of the 4th Amendment declaring his right to be secure against such searches and seizures is of no value, and, so far as those thus placed are concerned, might as well be stricken from the Constitution. The efforts of the courts and their officials to bring the guilty to punishment, praiseworthy as they are, are not to be aided by the sacrifice of those great principles established by years of endeavor and suffering which have resulted in their embodiment in the fundamental law of the land.

The Supreme Court addressed the applicability of the exclusionary rule, in the context of a knock and announce violation, in *Hudson v. Michigan*, 547 U.S. 586 (2006). In *Hudson*, the Supreme Court laid out what could be described as a two-part analysis in determining whether the exclusionary rule applies to a particular Fourth Amendment violation. The Court first noted that "whether the exclusionary sanction is appropriately imposed in a particular case, ... is an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct." *Id.* at 591 (citing to *United States v. Leon*, 468 U.S. 897 (1984)). In fashioning a test for when to apply the exclusionary rule, the Court held that the exclusionary rule is not an appropriate remedy for a knock and announce violation because "[the] rule has never protected...one's interest in preventing the government from seeing or taking evidence described in a warrant. Since the interests...have nothing to do with the seizure of the evidence, the exclusionary rule is inapplicable." *Id.* at 594. Thus, the first step in the analysis is to determine whether the violation at issue is actually associated with the seizure

of evidence. The Court went on to hold that even where the protected interests are tied to the seizure of evidence, the exclusionary rule can only be applied where its deterrence benefits outweigh its substantial social costs.[5] *Id.* The second step in the analysis, then, is to weigh the deterrence benefits against the social costs of exclusion.

*1. Association of Violation with Seizure of Evidence*

Having determined that a Fourth Amendment violation occurred, following *Hudson*, the threshold question for this Court is what interests are protected by the Fourth Amendment's proscription against "unreasonable searches and seizures." U.S. Const., Amdt. 4. If this Court finds that the interests are tied to the seizure of evidence, it must then conduct the *Hudson* balancing test of weighing the deterrence benefits with the social costs.

Turning first to the interests protected by the restriction against unreasonable searches and seizures, the Supreme Court opined in *Weeks* that the purpose of that proscription is directly tied to preventing the Government from unlawfully seizing evidence from a person's home. 232 U.S. at 391-93. In *Hudson*, the Court found that the interests protected by the knock-and-announce rule include the protection of human life and limb, the protection of property, and the privacy and dignity that are destroyed by a sudden entrance. *Hudson*, 547 U.S. at 594. The

---

[5] In evaluating those costs for knock and announce, the Supreme Court considered: whether applying the exclusionary rule would create a flood of litigation; the need for extensive litigation to determine whether there was a "reasonable wait time" in each case and whether there was reasonable suspicion (comparing the ease of determining whether or not there was a warrant or whether a *Miranda* warning was administered); and that the rule might lead to police officers' refraining from timely entry and incurring consequences such as violence and destruction of evidence. *Hudson*, 547 U.S. at 595-96. Additionally, the Court found that the deterrence benefits would be few, because violating knock and announce would allow police to prevent spoliation of evidence or avoid life-threatening resistance, both of which provide reasonable suspicion such that police do not have to abide by knock and announce anyway. *Id.* at 596. None of those circumstances exist in this case.

Court went on to note that these interests have "nothing to do with the seizure of the evidence." *Id.* The case sub judice is inapposite to *Hudson*, where the Fourth Amendment violation was distinct from the search and seizure. Here, Mrs. Thompson was seized and held outside her home for five hours *in order for* the executing agents to conduct their search. The Fourth Amendment violation was inextricably tied to the search and seizure itself. The totality of the circumstances of the search and seizure was unreasonable, including detaining Mrs. Thompson outside in the heat for five hours with no undergarments or pants, in the custody of an armed officer, and otherwise in the presence of armed officers, who refused to present a warrant despite Mrs. Thompson's requests. Since these actions against Mrs. Thompson were all executed in the course of enabling the executing agents to conduct their search and seizure of the Thompson home, the unreasonableness cannot be separated from the search and subsequent seizure. It is not the case here that "the interests...have nothing to do with the seizure of the evidence," *Hudson*, 547 U.S. at 594, and accordingly the exclusionary rule is applicable under the test in *Hudson*.

*2. Weighing of Deterrence Benefits Against Social Costs of Exclusion*

Having found that the interests protected by the prohibition against unreasonable searches and seizures are tied to the discovery of evidence, under *Hudson*, this Court must weigh the social costs of applying the exclusionary rule against the deterrence benefits. *Hudson*, 547 U.S. at 594. It is clear that the cost of the exclusion of relevant incriminating evidence will come into play; however, this is the case every time the exclusionary rule is utilized as a remedy. Unlike knock and announce, it is easy to determine whether a warrant was presented upon request. *Cf. Hudson v. Michigan*, 547 U.S. 586, 595 (finding that it is difficult to determine

13

whether a violation of knock and announce occurred).  It is also unquestionable that the circumstances of Mrs. Thompson's detention – five hours, in the sun, semi-clothed, and in view of armed officers – are unreasonable.  Furthermore, there was no concern that Mrs. Thompson would obstruct the search or destroy evidence had the officers shown her the warrant upon request, allowed her to get fully dressed, and permitted her respite from being outside without food and drink.  *See Groh v. Ramirez*, 540 U.S. 551, 562 n.5 (2004) (qualifying the issue of whether a warrant must be presented upon request to a situation where "an occupant of the premises is present and poses no threat to the officers' safe and effective performance of their mission").   The deterrence benefit, on the other hand, would ensure that an occupant's right to privacy is protected, and that his or her dignity is preserved. In addition, showing a warrant could avoid potential conflicts between citizens and police officers regarding the legality of a search.  In recognizing the efficacy of the exclusionary rule from *Weeks* to *Hudson*, our jurisprudence acknowledges that Courts are not hermetically sealed from the rest of the normative universe. The Court finds, therefore, that in applying the *Hudson* balancing test in this case, the value of deterring similar unreasonable, unnecessary, and imperious behavior on the part of executing officers in the future outweighs the costs of applying the exclusionary rule.

Accordingly, suppression is an appropriate remedy for this violation, and Thompson's motion to suppress is **GRANTED**.

The executing Agents testified that the search in this case was executed pursuant to ATF protocol.  As the Court has explained, however, the procedures used in handling the warrant were flawed and unreasonable.  In future circumstances, the proper protocol in a case such as this, where the executing agents believe there may be guns or other safety risks at the scene, is

for the entry team to secure the premises and the safety of the agents and any occupants.  Once the scene has been secured, the agents should present a copy of the warrant to the occupant to establish their authority.  Only then should the agents commence their search.  The Court understands that in some circumstances only one copy of the warrant may be present on the scene, in which case it is sufficient for the executing officers to show a copy of the warrant to any occupants but to retain possession of the warrant to refer to during the course of the search.  Such a procedure not only protects the safety of the officers and ensures that evidence may be properly collected, but also  respects our societal recognition of the importance of affording special protection to citizens' homes as the center of the private lives of Americans.

## IV. CONCLUSION

For the reasons set forth herein, Thomson's motion to suppress (doc. no. 15), is **GRANTED**.

**IT IS SO ORDERED.**

      <u>s/Algenon L. Marbley</u>
**ALGENON L. MARBLEY**
**United States District Court Judge**

**DATE: November 3, 2009**